IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL A. VALENCIA,<br><br>Defendant. | CASE NO.  1:24-CR-00190 KES-BAM<br>6:24-mj-00014-HBK |

**FINDINGS AND ORDER**

### I. Procedural Background

The defendant has been charged in a felony case by way of an indictment filed on August 1, 2024. Docket Entry 10. The defendant was ordered detained as a risk of flight and danger to the community after a detention hearing on August 16, 2025. Docket Entry 23. The defendant also has been charged in a misdemeanor case in which he has pleaded not guilty. 6:24-mj-00014-HBK.

The court conducted a hearing focused on the defendant's competence for trial on October 28, 2024. Docket Entry 33. At the conclusion of that hearing the court entered an order that committed the defendant to the custody of the Attorney General of the United States for up to four months so that efforts could be made to restore the defendant to competency. Docket Entry 34. That order was based, in part, upon the court's observations at a hearing on October 7, 2024, as well as review and consideration of a report from Dr. A.A. Howsepian, M.D, Ph.D. which has been filed under seal. Docket Entry 30. The order was also based, in part, on the defendant's unopposed motion, filed on

1

1  September 24, 2024, for an order to have the defendant committed to the custody of the Attorney
2  General for the purpose of restoring his competence.
3       The United States Attorney General, through the Bureau of Prisons, designated the defendant to
4  the Federal Medical Center (FMC) in Devens, Massachusetts.  The defendant arrived at FMC Devens on
5  February 12, 2025, and was admitted to the secure mental health unit the same day.  Qualified medical
6  professionals examined the defendant during a period of several months and attempted to restore him to
7  competency.  The court received a letter dated June 18, 2024, from Dr. Diana Hamilton, a forensic
8  psychologist at FMC Devens, which outlined various steps taken as part of the then-ongoing review and
9  evaluation of the defendant.  Docket Entry 41.  Dr. Hamilton then prepared and transmitted to the court
10 a more detailed report, dated June 24, 2025, that outlined actions taken to restore the defendant to
11 competence.  That report has been filed under seal.  Docket Entry 42.  An addendum to that report,
12 dated June 25, 2025, and prepared by Dr. Dean Cutillar, outlines a treatment plan and discusses the
13 likelihood of success of implementing that plan along with a discussion of the potentially adverse side
14 effects of administering the treatment plan.  Docket Entry 42.
15      The court conducted a hearing to review the submissions from BOP medical personnel on
16 August 11, 2025.  The court at that time conferred with the parties about the next appropriate steps, and
17 the parties agreed to continue discussing the case prior to an additional hearing on August 18, 2025.  At
18 the hearing on August 18, 2025, the parties informed the court that they were willing to stipulate that the
19 court had sufficient information upon which it could order that the defendant be medicated involuntarily
20 for the purpose of restoring him to competency.  The parties agreed that if called as witnesses, the
21 doctors who prepared a report or treatment plan would testify consistent with the documents they
22 prepared. Thus, the parties did not see the need for an additional hearing at which testimony would be
23 taken.  The parties also agreed that it would be in the best interests of the case, as well as the defendant,
24 for medical professionals at FMC Devens to attempt to restore the defendant to competency as
25 expeditiously as possible so that his ongoing mental health issues could be improved, and his criminal
26 cases could be addressed.
27 ///
28 ///

## II.   Findings and Order

The Supreme Court in *Sell v. United States* explained that, if a defendant cannot be medicated for an alternative purpose—"such as the danger that he poses to himself or others, or the fact that his refusal to take medication places his health at grave risk" — a court may order that he be involuntarily medicated to attain competency to stand trial. *Sell v. United States,* 539 U.S. 166, 179-183 (2003).

*Sell* set forth a four-part test for whether the government may involuntarily administer antipsychotic drugs to a mentally ill criminal defendant in order to render that defendant competent. *Sell,* 539 U.S. at 179. Under the first factor, the court must "find that important governmental interests are at stake." *Id*. at 180. Second, the court "must conclude that involuntary medication will significantly further those concomitant state interests." *Id*. at 181. Under the third factor, the court must conclude that involuntary medication is necessary to further those interests. *Id*. Finally, the court must determine that "administration of the drugs is medically appropriate." *Id*.

The court must find each *Sell* factor by clear and convincing evidence. *See, e.g., United States v. Diaz*, 630 F.3d 1314, 1332 (11th Cir. 2011) (holding that the government bears the burden of proving the factual findings underlying the *Sell* factors by clear and convincing evidence). As set forth below, each prong of the *Sell* test is met in this case, so the court will enter an order authorizing the involuntary administration of antipsychotic medication to the defendant.

### A.   Important Governmental Interests are at Stake

The court finds by clear and convincing evidence that the government is attempting to vindicate important interests by prosecuting the felony and misdemeanor cases against the defendant. It is well established that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." *Sell, 539 U.S.* at 180. A magistrate judge, in determining that the defendant should be detained pending the outcome of the felony case, found by clear and convincing evidence that the charged offense – assault on a federal officer resulting in bodily injury – is a serious crime which carries with it a potential maximum twenty-year prison sentence and potential $250,000 fine. Notably, the charged offense has an element the use of force against another individual, and this contributes to it properly being considered a serious offense. In addition, the defendant has a history of arrests and convictions related to disorderly conduct and/or resisting or obstructing law enforcement officers. And

the current misdemeanor case results from the defendant's alleged repeated calls to emergency service providers in or near Yosemite National Park, including many calls in which he threatened to harm people including law enforcement.  Moreover, federal law enforcement officers had previously encountered the defendant on federal land in the Central District of California, issued a citation to him with a court date, but the defendant returned to Wisconsin and did not resolve the federal misdemeanor criminal charge.

### B. Involuntary Medication will Significantly Further Important Government Interests.

The second *Sell* factor requires the court to find that the administration of the drugs is both (1) "substantially likely to render the defendant competent to stand trial," and (2) "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell,* 539 U.S. at 181.  The court notes that Dr. Howsepian, retained by the defense, opined at page 10 of his written report dated September 9, 2024, that "Mr. Valencia's psychotic illness requires treatment with antipsychotic medications – which *likely* will restore him to competency, both because Schizophrenia and related primary psychotic disorders on the Schizophrenia spectrum are likely to respond to antipsychotic medications *and* because his mother reports (as noted in the Pretrial Services Report) that, in the past, when properly medicated, he did fairly well" (emphases in original).  Dr. Howsepian also opined that the proposed treatment could only be carried out in a facility which can, if necessary, treat Mr. Valencia involuntarily because he lacks insight into his own serious mental illness.  Howsepian Report at 10. The court also accepts Dr. Hamilton's report which concurs that "most individuals with schizophrenia respond well to treatment with antipsychotic medication. Docket Entry 42 at 10.

### C. Involuntary Medication is Necessary to Further Significant Government Interests.

With regard to the third *Sell* factor, the court must (1) "find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results," and (2) "consider less intrusive means for administering the drugs," such as a court order backed by the power of contempt, before considering more intrusive methods. *Sell,* 539 U.S. at 183.  Here, Dr. Hamilton opined in a forensic psychological report dated June 24, 2025, that there is "growing acceptance among mental health professionals that antipsychotic medication is an appropriate treatment for delusional disorder. Docket Entry 42 at 22.  Dr.

1 Hamilton's report also notes that as "a group, psychiatric medications tend to have fewer side effects
2 than most other classes of medications. *Id*. Finally, Dr. Cutillar has more recently opined that the
3 proposed medication(s) "will most likely decrease Mr. Valencia's symptoms of psychosis." Docket
4 Entry 42, Addendum at 1. The court is satisfied that the defendant has repeatedly refused to take
5 medication that has been offered to him, and it is unlikely that he will accept any medication to restore
6 his competence voluntarily.

### D.  Administration of Medication is Medically Appropriate.

Fourth, the court must determine that "administration of the drugs is medically appropriate, i.e., in the patient's best interest in light of his medical condition." *Id*. "The specific kinds of drugs at issue may matter here" since "[d]ifferent kind of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Id*. Any *Sell* order must be based on an individualized treatment plan, though it is permissible for a range of medications to be specified. The court is satisfied that the individualized treatment plan, dated June 25, 2025, appropriately outlines the least intrusive method by which the defendant's competency might be restored. The plan also incorporates safeguards to reduce and address side effects that might result from any medication that is administered to the defendant.

### III.  CONCLUSION

The court concludes that the government has met its burden in showing by clear and convincing evidence that there is an important governmental interest in prosecuting the defendant that is not lessened by any mitigating factors, the administration of involuntary medication furthers this interest, the administration of involuntary medication is necessary to further this interest, and such treatment is medically appropriate for the defendant at this time. The court **GRANTS** the government's motion for involuntary treatment and hereby **DIRECTS** the Bureau of Prisons to continue to detain defendant, Michael A.Valencia, for involuntary treatment for a period of up to 180 days as may be necessary to restore him to competency.

To the extent necessary, it is **FURTHER ORDERED** that time under the Speedy Trial Act will continue to be excluded under 18 U.S.C. §§3161(h)(1)(A), (7)(A) and (h)(7)(B)(iv) on the basis of the agreements of the parties for the reasons previously stated and agreed upon in the record. The trailing misdemeanor case, 6:24-mj-00014-HBK, will be scheduled for the same date and time as the felony case

1:24-cr-00190 KES-BAM when and as appropriate.

IT IS SO ORDERED.

    Dated:   August 21, 2025              _____
                                                        UNITED STATES DISTRICT JUDGE